Wauwatosa Cemetery Association, Respondent, vs. City of Wauwatosa, Appellant.

*January 15—February 9, 1937.*

*Roy R. Stauff,* city attorney, for the appellant.

For the respondent there was a brief by *Gabel, Dineen, McCarty & Young* of Milwaukee, and oral argument by *George H. Gabel.*

NELSON, J.   So many of the facts alleged in the complaint as are necessary to an understanding of this controversy will be summarized.   The plaintiff now is, and for more than twenty years has been, a cemetery association, duly organized under the laws of this state.   During all that time it has owned and maintained a cemetery located within the boundaries of the defendant city.   The defendant is a duly organized municipal corporation, located in Milwaukee county.   Prior to December 30, 1930, the defendant was a city of the fourth class, but on that date it became a city of the third class.   For many years prior to June 1, 1920, and ever since that date, the plaintiff has received from the owners of cemetery lots various sums of money, to insure the perpetual care of their lots.   Out of the moneys so received, various sums were deposited with the treasurer of the defendant city pursuant to the provisions of secs. 1455*j* and 1455*k* of the Wisconsin statutes, 1898, and acts amendatory thereof.   On June 1, 1920, such deposits amounted to $1,057.40.   On the first day of each June thereafter, up to and including June 1, 1934, the plaintiff deposited with the defendant's treasurer other sums of money received by it for the perpetual care of lots and graves in its cemetery.   On the first day of each June, during the years 1921 to 1933, inclusive, the treasurer of the defendant city paid to the plaintiff interest at the rate of four per cent per annum on the total of all sums so deposited, except that on June 1, 1933, the said treasurer paid to the plaintiff the sum of $493.98, which was just $100 less than it should have been, had the interest been correctly computed at four per cent per annum on the funds so deposited.   A schedule covering the period, June 1, 1920, to June 1, 1934, set forth in the complaint, shows the total sums deposited with the city

treasurer and all payments of interest made to the plaintiff. The amounts of interest paid to the plaintiff for the years ending June 1, 1931, 1932, and 1933 were $487.97, $556.98, and $493.98, respectively. All deposits made were accepted by the defendant's treasurer without objection. The city retained all of the sums deposited with it by the plaintiff and carried the correct amounts thereof on its books to the credit of the plaintiff. On June 17, 1930, $10,000 of the amount deposited was diverted by the defendant to its general fund and used for general corporate purposes, the sums diverted being repaid as follows: April 21, 1931, $8,500; February 3, 1932, $1,500. On June 1, 1934, the total funds deposited with the city treasurer amounted to $16,049.40. On August 7, 1934, the common council of the defendant city resolved that the city treasurer pay to the plaintiff, on demand, the balance of the fund deposited with it after deducting the sums of $556.98 and $493.98,—the amounts of the interest theretofore paid by it to the plaintiff on June 1, 1932, and June 1, 1933. On August 7, 1934, the defendant city paid to the plaintiff the sum of $14,998.44, being the total amount of the fund, less the amount of interest paid to the plaintiff on June 1, 1932, and June 1, 1933. Thereafter the plaintiff filed its claim against the city for the amount of the interest deducted by the city; for the sum of $616.97, asserted to be due it as interest on the funds deposited, for the year ending June 1, 1934; for the sum of $117.48, asserted to be due it for interest on the amount deposited from June 1, 1934, to August 7, 1934; and for the sum of $100, which was erroneously not paid to it for the year ending June 1, 1933; amounting in all to $1,885.41. The city disallowed plaintiff's claim on September 18, 1934. The plaintiff demands judgment for the sum asserted to be due it, together with interest from September 18, 1934.

During all of the times mentioned in the complaint, the legislature, by enactments deemed appropriate by it, has sought to promote and foster perpetual care of cemetery lots

and graves, by permitting cemetery associations to receive moneys in trust for that purpose, and to safeguard and protect such funds thereafter. It would serve no useful purpose to trace the development of the statutory law relating to perpetual care. Suffice it presently to say that in 1917 cemetery associations were required by law to accept proper sums offered to them for the perpetual care of lots and graves. The law also provided that all such moneys might be deposited with the treasurer of the town, village, or city nearest to the cemetery owned by any such association in the first week of June each year; that such treasurer should receive the same; that the treasurer should keep all such money so deposited in perpetuity to the credit of such association; that the treasurer might invest such funds in bonds and other approved securities under sec. 2100$b$, or deposit such funds with a bank or trust company organized under the laws of this state, and that if such funds were not invested, they should bear four per cent interest. Sec. 1455$j$ and 1455$k$, Stats. 1917. In 1923 the statute was revised and re-enacted but without material change as to the right of a cemetery association to deposit perpetual care moneys with the treasurer of "the municipality nearest the cemetery" or as to the four per cent interest which it should bear, if not invested by the treasurer. Ch. 448, Laws of 1923.

The law was further amended by ch. 227, Laws of 1927, but in no way materially affecting this controversy. In 1929, the law was again amended but the following language was retained:

". . . Or it [perpetual care money] may be deposited with the treasurer of the municipality nearest such cemetery, and such municipality shall pay said association annually interest on sums so deposited of not less than four per cent per annum." Chs. 65 and 196, Laws of 1929.

In 1931, the law was again amended but without changing the right of a cemetery association to deposit moneys with the municipality or the duty of the municipality to pay in-

terest to the association. Ch. 326, Laws of 1931. The legislature of 1933, by ch. 134, amended the statute to read as follows:

"Money received by an association for perpetual care shall be invested as provided in section 231.32, or in such other manner as may be approved by the county judge of the county or adjoining counties wherein the cemetery is located, or it may be deposited with the treasurer of the county in which such cemetery is located, and such county shall pay said association annually interest on sums so deposited of not less than three per cent per annum."

During all the times subsequent to the enactment of ch. 448, Laws of 1923, and up to the time when ch. 134, Laws of 1933, went into effect, the law did not expressly permit the deposit to be made with the treasurer of the county. The statute was again amended by ch. 259, Laws of 1935, amending the prior law as follows:

". . . Or it may be deposited with the treasurer of the county or city in which such cemetery is located, and such county or city if it accepts such deposits shall pay said association annually interest on sums so deposited of not less than three per cent per annum."

At all times subsequent to the enactment of ch. 60, Laws of 1911, the law in substance provided that it should not be in force or effective in counties having a population of one hundred fifty thousand or more except as to cemeteries wholly within fourth-class cities. Ch. 134, Laws of 1933, substituted for the words "one hundred fifty thousand or more" the words "one hundred thousand or more." The law, therefore, was by its terms applicable to the plaintiff, whose cemetery was wholly within the city of Wauwatosa, a city of the fourth class up to December 30, 1930, when it became a city of the third class.

It appears from the allegations of the complaint that on June 1, 1931, and on each June first thereafter, up to and

including June 1, 1934, the city accepted deposits from the plaintiff, and also paid interest to the plaintiff computed at four per cent per annum, on June 1, 1931, June 1, 1932, and June 1, 1933 (less $100, which resulted from an asserted error in computing the interest) ; that the deposits were accepted without objection and the interest paid as theretofore.

It is contended by the defendant city, (1) that the law which provided in substance that it should not be in force in counties having a population of one hundred fifty thousand or upwards except as to cemeteries wholly within fourth-class cities offends sec. 23, art. IV, and sec. 3, art. XI, of the constitution of this state, and (2) that, regardless of the constitutionality of the act, the city was not in any event legally bound to accept deposits from the plaintiff, or to pay interest on the amount deposited subsequent to the time it became a city of the third class. In our view, there is no present need to decide whether the several statutes assailed are constitutional since, regardless of that question, it is our opinion that the allegations of the complaint, taken as true, show that the defendant is liable to the plaintiff. For many years prior to 1931, the defendant city had accepted and paid interest to the plaintiff each year at the rate of four per cent. Commencing in 1931, the defendant continued to accept deposits each year up to June 1, 1934, inclusive, without objection and continued to pay interest at four per cent per annum up to June 1, 1933, inclusive, except as to the $100 not paid as the result of an error in computing the interest. Had the defendant, upon becoming a city of the third class, notified the plaintiff that it would no longer continue to act as trustee of the funds deposited with it, or had it taken steps to terminate the trust, this controversy would not have arisen. The city, however, retained the fund, accepted further deposits and continued to pay interest just as it had done for many years. It seems clear that if the city desired to terminate the trust it was its

duty to notify the plaintiff of its determination so to do and promptly to turn over the funds to the plaintiff. Not having done so, and having lulled the plaintiff into the belief that the arrangement would continue, and having withheld the funds and effectually prevented the plaintiff from otherwise investing the funds in income-producing securities, the defendant should not now be permitted to say, that after it became a city of the third class, it owed no duty to the plaintiff other than to preserve the corpus or principal of the trust. We are of the opinion that until the defendant city gave notice to the plaintiff that it would no longer continue to act as trustee, the trust continued.

Without unduly prolonging this opinion, we reach the following conclusions:

(1) That the sums of money which were paid to the plaintiff for perpetual care of cemetery lots and which were deposited with the defendant city were trust funds whether in the custody of the plaintiff or the defendant; (2) that independently of a statute authorizing a city to act as trustee of perpetual-care funds, the public interest to be subserved by the perpetual care of lots and graves in a cemetery located within its boundaries and in which burial privileges are available to the general public or to some substantial part thereof, is sufficient to render it proper, in the absence of express prohibition by the legislature, for a city to act as trustee of perpetual-care funds intrusted to it by such cemeteries; (3) that since the defendant, after becoming a city of the third class, continued for four years to accept deposits made by the plaintiff as it had theretofore done for many years and continued to pay interest as it had likewise done for many years, without intimating to the plaintiff that the old arrangement had ceased, it thereby continued the arrangement until August 7, 1934, when the defendant resolved to turn the trust moneys over to the plaintiff and to terminate the trust; (4) that the

city, having voluntarily paid interest at the rate of four per cent per annum subsequent to December 30, 1930, should not in justice be permitted to recover such moneys as "moneys paid by mistake" under the *quasi*-contract law of this state, because, under the circumstances, no benefit was conferred upon the plaintiff, which in equity and good conscience it should not retain, and therefore the defendant should not be permitted to deduct the amount of the interest paid from the principal of the trust fund upon the termination of the trust; and (5) that the arrangement which continued without objection on the part of the defendant, after it became a city of the third class, justifies the conclusion that the city should be held to be estopped to assert that during that time it had ceased to act as trustee and was, during that time, a mere depository of the funds.

*By the Court.*—Order affirmed.